Brett M. Schuman (SBN 189247)
*bschuman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.:   (415) 733-6000
Fax.:   (415) 677-9041

Andrew S. Ong (SBN 267889)
*aong@goodwinlaw.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025-1105
Tel.:   (650) 853-3100
Fax.:   (650) 853-1038

Attorneys for Plaintiff
Applied Materials, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., | Case No. 3:17-cv-04990-EMC |
| Plaintiff, | **PLAINTIFF APPLIED MATERIALS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| DR. URI COHEN, | Date:        February 1, 2018 |
| Defendant. | Time:        1:30 p.m. |
| | Courtroom:   Courtroom 5, 17th Floor |
| | Judge:        Hon. Edward M. Chen |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..........................................................................................................1

II.    BACKGROUND ...........................................................................................................2

       A.     Cohen's TSMC Complaint ................................................................................2

       B.     Applied's Declaratory Judgment Complaint ....................................................6

III.   ARGUMENT .................................................................................................................8

       A.     Cohen's TSMC Allegations Give Rise to an Actual and Justiciable
              Controversy. .......................................................................................................8

       B.     Cohen's Attempts to Avoid Jurisdiction Are Unavailing. ..............................12

       C.     The Court Should, in Its Discretion, Exercise Jurisdiction Over Applied's
              Case… ...............................................................................................................15

IV.    CONCLUSION.............................................................................................................16

i

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page(s)**

3

*ABB Inc. v. Cooper Indus., LLC*,
    635 F.3d 1345 (Fed. Cir. 2011)...................................................................12

4

5

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
    975 F. Supp. 2d 1083 (N.D. Cal. 2013) .......................................................13

6

*Amazon.com, Inc. v. Straight Path IP Grp. Inc*,
    No. 5:14-CV-04561-EJD, 2015 WL 3486494 (N.D. Cal. May 28, 2015)...........................9, 10, 12

7

8

*Cepheid v. Roche Molecular Sys., Inc.*,
    No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ...........................................14

9

*Intel Corp. v. Future Link Sys., LLC*,
    No. 14-377-LPS, 2015 WL 649294 (D. Del. Feb. 12, 2015)...................10

10

11

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014)........................................................ *passim*

12

*Microsoft Corp. v. GeoTag, Inc.*,
    No. CV 11-175-RGA, 2014 WL 4312167 (D. Del. Aug. 29, 2014)...........................11

13

14

*In re Mobile Telecommunications Techs., LLC*,
    247 F. Supp. 3d 456, 461 (D. Del. 2017) ....................................................10

15

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
    No. 5:11-CV-02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011).................12, 13, 15, 16

16

17

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ....................................................................15

18

**Statutes**

19

35 U.S.C. § 271(g) .........................................................................................12

20

21

22

23

24

25

26

27

28

1

## I.       **INTRODUCTION**

2      Plaintiff Applied Materials, Inc. ("Applied") respectfully requests that the Court deny

3   Defendant Dr. Uri Cohen's ("Cohen") motion to dismiss.  *See* Dkt. No. 52.  There is no dispute that,

4   in May 2017, Cohen filed a complaint in the Eastern District of Texas against Applied's customer,

5   TSMC, alleging that TSMC (and, by extension, TSMC's downstream customers) infringed certain of

6   Cohen's patents based on TSMC's manufacture of semiconductors using Applied's Endura platform

7   and/or its Endura Volta system (hereafter, "Endura Volta").  *See* Compl., Ex. A (the "TSMC

8   Complaint").[1]   As a result of the allegations made by Cohen in the TSMC Complaint, there exists an

9   actual and justiciable controversy between Applied and Cohen as to whether the use of Applied's

10  Endura Volta technology infringes the patents-in-suit as alleged in the TSMC Complaint.

11  Declaratory judgment jurisdiction is therefore proper.

12      To try to defeat declaratory judgment jurisdiction, Cohen's motion to dismiss serves up a

13  watered-down version of his own complaint against TSMC.  As Cohen would have the Court

14  believe, the TSMC Complaint contains nothing more than "the ***mere discussion*** of an AMAT

15  product."  Mot. at 11 (emphasis added).  But, far from a "mere discussion" of Applied's Endura

16  Volta, Cohen's infringement allegations against TSMC rely almost entirely upon an ***Applied***

17  instructional video describing how to use ***Applied's*** Endura Volta to practice the allegedly infringing

18  methods of manufacturing certain semiconductor structures.  In fact, the TSMC Complaint cites

19  exclusively to screenshots from the Volta Animation to allege that each limitation of each of the

20  exemplary claims of the four patents-in-suit is met by use of Applied's Endura Volta.  *See, e.g.*,

21  TSMC Complaint ¶¶ 123(a)–(e), 127(a)–(f).  Cohen's allegations are no "mere discussion," but

22  rather an affirmative act and accusation by Cohen directed at Applied and the use of its Endura Volta

23  product as allegedly infringing his patents-in-suit.

---

24  [1] Applied's Complaint refers to the TSMC Complaint as the "EDTX Customer Suit," and the two
    terms are therefore used synonymously herein.  Since the filing of the Complaint in this case,
25  Cohen's infringement action against TSMC has been transferred from the Eastern District of Texas
    to this Court.  Cohen has also since filed a Second Amended Complaint against TSMC in the
26  transferred case.  *See Cohen v. TSMC North America Corp.*, No. 3:17-cv-06451-EMC, Dkt. No. 55
    (N.D. Cal.).  The infringement allegations, including the diagrams from Applied's Volta Animation
27  YouTube video, are for all relevant purposes identical as between the TSMC Complaint (filed before
    Applied filed its DJ Complaint) and the Second Amended Complaint.

28

Under such circumstances, it is irrelevant whether Cohen never contacted Applied or directly accused Applied of infringement prior to filing the TSMC Complaint.  Nor does it matter that, according to Cohen, he supposedly has never subjectively believed Applied infringes the patents-in-suit.  Despite claiming there is no actual controversy, Cohen has tellingly not offered or provided a covenant not to sue Applied or any of its Endura Volta customers for infringement.  Accordingly, under the totality of the circumstances, there exists an actual controversy between Applied and Cohen.  Cohen's motion to dismiss should be denied.

Moreover, Cohen has said, repeatedly, that he would not oppose a motion to intervene by Applied in the *TSMC v. Cohen* case.  *See, e.g.*, Dkt. No. 50 at 6; Mot. at 4–5.  Therefore, his motion to dismiss is essentially pointless, and Applied questions why he has burdened the Court with it.  Applied believes that Cohen's motion to dismiss should be denied.  However, to the extent the Court disagrees, Applied would be willing to file a motion to intervene in one or both of the pending cases between TSMC and Cohen.

## II.   BACKGROUND

### A.   Cohen's TSMC Complaint

As noted above, on May 5, 2017, Cohen filed a patent infringement lawsuit in the Eastern District of Texas against Applied's customer TSMC and TSMC's customers Apple and Huawei, alleging infringement of U.S. Patent Nos. 6,518,668 (the "'668 patent"); 6,924,226 (the "'226 patent"); 7,199,052 (the "'052 patent"); and 7,282,445 (the "'445 patent," collectively, the "patents-in-suit").  *See* Compl. ¶ 8.  The patents-in-suit are generally directed to the manufacturing of metallic interconnects in semiconductor devices:

- The '668 patent is entitled "Multiple Seed Layers for Metallic Interconnects."  As set forth in exemplary claim 26, the '668 patent is directed to "[a] metallic interconnect *fabricated by* using the multiple seed layer structure of claim 1."

- The '226 patent is entitled "Methods for Making Multiple Seed Layers for Metallic Interconnects."  As set forth in exemplary claim 1, the '226 patent is directed to "[a] *method* for making metallic interconnects."

2

- The '052 patent is entitled "Seed Layers for Metallic Interconnects."  As set forth in exemplary claim 4, the '052 patent is directed to "[a] *method* for making metallic interconnects."

- The '445 patent is entitled "Multiple Seed Layers for Interconnects."  As set forth in exemplary claim 18, the '445 patent is directed to "[a] *method* for depositing two or more seed layers over a substrate."

On August 28, 2017, Cohen filed his First Amended and Supplemental Complaint, which removed Apple and TSMC North America as named defendants and modified the named Huawei entities.  Cohen alleges that TSMC uses Applied's Endura Volta to manufacture the accused chips:

> 56.    To achieve this integrated circuit design in its 20 nanometer and 16 nanometer node technologies, as reported in TSMC's IEEE Paper, TSMC on information and belief *utilizes equipment supplied to it by Applied Materials, Inc. ("AMAT"), including AMAT's Endura platform and Endura Volta System.*

> 57.    The Endura platform supports both Physical Vapor Deposition (PVD) and Chemical Vapor Deposition (CVD) processes, including the Endura Volta System, which was introduced by AMAT on May 13, 2014.

> 58.    On information and belief, the method utilized by TSMC to manufacture the Accused Chips and the resulting structure of the Accused Chips themselves are consistent with the methods and structures as explained by TSMC in its IEEE Paper, and as depicted below.

TSMC Complaint ¶¶ 56–58 (emphasis added).

By way of background, Applied's Endura platform is a highly successful platform consisting of various equipment sold for use in fabricating metallic interconnects used in semiconductor chips.  *See* Declaration of Brett Schuman, Ex. 1.[2]  Applied introduced the Endura Volta CVD Cobalt chamber in May 2014 to be used as part of the Endura platform.  *See id.*

//

//

//

---

[2] http://www.appliedmaterials.com/semiconductor/products/endura (last visited Jan. 8, 2018).



In describing how TSMC's use of Applied's Endura Volta allegedly infringes the claimed methods of the patents-in-suit, the TSMC Complaint copies and pastes numerous screenshots from Applied's Volta Animation video:

> 59.    As shown here, the resulting 20 nanometer and 16 nanometer devices fabricated by TSMC contain a multiple seed layer structure comprising a patterned insulating layer formed on a substrate, a tantalum barrier layer over the substrate, a first seed layer comprising cobalt, a second seed layer comprising copper, and an electroplated metallic layer of copper disposed over the second seed layer:



*Id.* ¶ 59 & n.14 (footnote citing to "Volta Animation," appliedschannel, *available at* https://www.youtube.com/watch?v=EcWdzKRK2dk); *see also id.* ¶¶ 60–62 (additional screenshots).

At the end of his TSMC Complaint, Cohen then sets forth four counts of patent infringement, one for each of the patents-in-suit.  For each of the exemplary claims identified—claim 26 of the '668 patent (*id.* ¶ 122), claim 1 of the '226 patent (*id.* ¶ 119), claim 4 of the '052 patent (*id.* ¶ 123), and claim 18 of the '445 patent (*id.* ¶ 127)—Cohen relies ***exclusively*** on screenshots from Applied's Volta Animation to allege infringement by TSMC.  For example, the below chart contains Cohen's

allegations of infringement with respect to claim 4 of the '052 patent, with all images copied directly from Applied's Volta Animation:

| '052 Patent, Claim 4 Limitation | Volta Animation Cited in Cohen's TSMC Complaint (*see* TSMC Complaint ¶¶ 123(a)–(e)) |
|---|---|
| a.  forming a patterned insulating layer on a substrate, the patterned insulating layer including at least one opening and a field surrounding the at least one opening; |  |
| b.  depositing a barrier layer over the field and inside surfaces of the at least one opening; |  |
| c.  chemical vapor depositing a first seed layer over the barrier layer; | <br>"A first seed layer is deposited by a CVD technique over the barrier layer." |
| d.  physical vapor depositing a second seed layer over the first seed layer, wherein the second seed layer is thicker than the first seed layer over the field; and |  |

5

1

| '052 Patent, Claim 4 Limitation | Volta Animation Cited in Cohen's TSMC Complaint (*see* TSMC Complaint ¶¶ 123(a)–(e)) |
|---|---|
| |  "A second seed layer is deposited by a PVD technique over the first seed layer. The second seed layer is thicker than the first seed layer over the field." |
| e. filling the at least one opening by electroplating a metallic layer comprising copper or a copper alloy over the two seed layers. | "The openings are filled by electroplating copper over the two seed layers." |

*See* TSMC Complaint ¶¶ 122(a)–(g) ('668 patent), 119(a)–(c) ('226 patent), 127(a)–(f) ('445 patent).

## B. Applied's Declaratory Judgment Complaint

In light of the extensive allegations by Cohen directed at an allegedly infringing use of Applied's Endura Volta technology to practice a manufacturing technique described in Applied's video, Applied had a reasonable apprehension that Cohen would attempt to assert the patents-in-suit against Applied. *See* Compl. ¶ 4. This apprehension stems from the fact that "[t]he EDTX Customer Suit complaint predicates the infringement claims against TSMC on TSMC's use of Endura Volta to fabricate metallic interconnects in certain accused semiconductor chips ('Accused Chips'), which Cohen claims contain a multiple seed layer structure." *Id.* ¶ 10. The particular use of Endura Volta accused by Cohen of infringement is described in Applied's Volta Animation. As stated in Applied's complaint: "The EDTX Customer Suit cites to and reproduces images from an

Applied 'Volta Animation' that Cohen contends shows a fabrication method of the Accused Chips' metallic interconnects having a multiple seed layer structure comprising a patterned insulating layer formed on a substrate, a tantalum layer, a cobalt layer, a copper layer, and an electroplated metallic layer of copper."  *Id.* ¶ 11.

In addition, as Applied alleges, its principal place of business is located in Santa Clara, California, *id.* ¶ 6, and "Endura Volta was developed and designed by Applied in California," *id.* ¶ 13—i.e., within the United States.  Applied further alleges that, "[i]n the course of developing and testing Endura Volta, Applied fabricated metallic interconnects using various methods, including the method accused by Cohen in the EDTX Customer Suit of infringing the patents-in-suit."  *Id.* ¶ 13. "TSMC purchased Endura Volta from Applied and uses Endura Volta to fabricate metallic interconnects."  *Id.* ¶ 14.

Applied's Complaint notes Cohen's repeated references to Applied's Volta Animation to allege infringement of each of the patents-in-suit:

> 22.    In the EDTX Customer Suit complaint, Cohen alleges that TSMC's use of Endura Volta infringes at least claim 26 of the '668 patent.  To allege this infringement, the EDTX Customer Suit complaint cites to Applied's Volta Animation in support of each limitation of the asserted claim.
>
> *       *       *
>
> 26.    In the EDTX Customer Suit complaint, Cohen alleges that TSMC's use of Endura Volta infringes at least claim 1 of the '226 patent.  To allege this infringement, the EDTX Customer Suit complaint cites to Applied's Volta Animation in support of each limitation of the asserted claim.
>
> *       *       *
>
> 30.    In the EDTX Customer Suit complaint, Cohen alleges that TSMC's use of Endura Volta infringes at least claim 4 of the '052 patent.  To allege this infringement, the EDTX Customer Suit complaint cites to Applied's Volta Animation in support of each limitation of the asserted claim.
>
> *       *       *
>
> 34.    In the EDTX Customer Suit complaint, Cohen alleges that TSMC's use of Endura Volta infringes at least claim 18 of the '445 patent.  To allege this infringement, the EDTX Customer Suit complaint cites to Applied's Volta Animation in support of each limitation of the asserted claim.

*Id.* ¶¶ 22, 26, 30, 34.

7

1    Given Cohen's allegations, there exists an actual controversy between Applied and Cohen as

2    to whether Applied has infringed, either directly or indirectly, the patents-in-suit, and Applied has

3    thus requested a judicial declaration of non-infringement as to each of the patents-in-suit.  *See, e.g.*,

4    *id.* ¶¶ 23 ("There is a current, actual controversy and genuine dispute between the parties as to

5    whether Applied has infringed the '668 patent, and a judicial declaration that devices containing a

6    metallic interconnect fabricated using Endura Volta do not and will not infringe at least claim 26 of

7    the '668 patent is appropriate and necessary to resolve the controversy."), 27, 31, 35.

8    **III.    ARGUMENT**

9       **A.    Cohen's TSMC Allegations Give Rise to an Actual and Justiciable Controversy.**

10   The allegations in Cohen's TSMC Complaint give rise to an actual and justiciable

11   controversy between Cohen and Applied as to whether the use of Applied's Endura Volta to

12   manufacture metallic interconnects infringes the patents-in-suit.  As detailed above, the TSMC

13   Complaint expressly relies on the method described and depicted in Applied's Volta Animation to

14   allege that each and every claim limitation of the four exemplary claims is met by TSMC.  Contrary

15   to Cohen's assertion, these infringement allegations go far beyond a "mere discussion" of Applied's

16   product in the TSMC Complaint.  Instead, such allegations provide a sufficient basis for the Court to

17   assert declaratory judgment jurisdiction over this case.

18   The Federal Circuit's decision in *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir.

19   2014), is instructive here.  In that case, the patentee DataTern had sued numerous Microsoft and

20   SAP customers, alleging infringement based on the customers' use of Microsoft's and SAP's

21   software.  *Id.* at 902.  The patentee had provided claim charts to the customers that referred

22   extensively to Microsoft and SAP functionality.  *Id.*  Microsoft and SAP subsequently filed

23   declaratory judgment lawsuits against the patentee.  The district court held it had subject matter

24   jurisdiction over the DJ plaintiffs' claims, and DataTern appealed after conceding non-infringement

25   based on the court's claim construction.  DataTern argued to the Federal Circuit that "the [district]

26   court lacked jurisdiction because DataTern never approached Appellees regarding a license, never

27   accused Appellees of infringement, and indicated that it did not intend to sue Microsoft."  *Id.* at 903.

28   The Federal Circuit found the patentee's arguments unpersuasive—that is, the Federal Circuit held

8

1   that declaratory jurisdiction existed, even where the patentee had not accused the supplier plaintiffs

2   of infringement.

3          Under the facts presented, the Federal Circuit determined there was no controversy as to the

4   DJ plaintiffs' direct infringement.  The court instead focused on whether a controversy existed based

5   on the DJ plaintiffs' inducement of infringement.  "To prove inducement of infringement, unlike

6   direct infringement, the patentee must show that the accused inducer took an affirmative act to

7   encourage infringement with the knowledge that the induced acts constitute patent infringement."

8   *Id.* at 904.  As the Federal Circuit noted,

9          Certainly it is not the case that definitive proof must exist that would establish each
          element.  But, to establish a substantial controversy regarding inducement, there must
10         be allegations by the patentee or other record evidence that establish ***at least a***
          ***reasonable potential that such a claim could be brought***.

11

12  *Id.* at 905 (emphasis added).

13         The court concluded that the claim charts used against SAP's and Microsoft's customers

14  supported a finding of jurisdiction based on an implied assertion of induced infringement.  As to

15  SAP, the Federal Circuit stated:

16         The claim charts provided to the SAP customers allege direct infringement of the
          '402 and '502 patents based on SAP's customers' use of BusinessObjects.  Moreover,
17         these claim charts cite to SAP-provided user guides and documentation for each claim
          element. ***In other words, DataTern's claim charts show that SAP provides its***
18         ***customers with the necessary components to infringe the '402 and '502 patents as***
          ***well as the instruction manuals for using the components in an infringing manner.***
19         ***Providing instructions to use a product in an infringing manner is evidence of the***
          ***required mental state for inducing infringement.***  Considering these instructions in
20         view of the rest of the evidence on record, we conclude that SAP has established that
          there existed a substantial controversy regarding whether SAP induces infringement.

21

22  *Id.* (emphasis added).  The court made a similar determination with respect to Microsoft as to one of

23  the patents at issue.  *Id.*  The court therefore concluded that, under the totality of the circumstances,

24  jurisdiction existed based on the patentee's assertions of infringement against the declaratory

25  judgment plaintiffs' customers.  *Id.* at 907.

26         After *DataTern*, Judge Davila was presented with a similar situation in *Amazon.com, Inc. v.*

27  *Straight Path IP Grp. Inc*, No. 5:14-CV-04561-EJD, 2015 WL 3486494 (N.D. Cal. May 28, 2015).

28  There, the court noted "that there is no allegation here that [the patentee] Straight Path ever

9

communicated directly with Amazon in any way, nor that Straight Path ever directly threatened Amazon with suit." *Id.* at *5.  Thus, "[i]f subject matter jurisdiction exists as to some or all of these claims, it must emanate from implicit threats that Straight Path made to Amazon by way of its communications to Amazon's customers." *Id.*  The court reviewed and discussed the patentee's infringement contentions, which referred repeatedly to Amazon-generated materials and identified Amazon software and servers as satisfying all of the claim elements.  *Id.*  The court concluded that, "similar to *DataTern*, Straight Path relies on Amazon's provided material for each asserted claim element and not solely on third-party documentation for several key claim limitations.  Although Straight Path asserted that it never approached Amazon regarding licensing and never accused Amazon of infringement, Straight Path's infringement claims against LGE and VIZIO were based on LGE and VIZIO's use of Amazon's products." *Id.* at *6 (internal citation omitted).  Thus, the court held that declaratory judgment jurisdiction existed and denied the patentee's motion to dismiss.[3]

Other courts since *DataTern* have asserted declaratory judgment jurisdiction based on a patentee's infringement allegations directed at a declaratory judgment plaintiff's customer—even where the patentee never had any contact with the declaratory judgment plaintiff prior to filing suit. *See, e.g.*, *In re Mobile Telecommunications Techs., LLC*, 247 F. Supp. 3d 456, 461 (D. Del. 2017) ("Such repeated references identifying DJ Plaintiffs' products as infringing may give rise to a 'substantial controversy' about whether those products infringe the patents-in-suit.  It is not necessary for DJ Plaintiffs to demonstrate that [patentee] MTel has made specific threats of litigation against them in order to establish subject matter jurisdiction.") (internal citations omitted); *Intel Corp. v. Future Link Sys., LLC*, No. 14-377-LPS, 2015 WL 649294, at *6–8 (D. Del. Feb. 12, 2015) (finding actual controversy could be "reasonably inferred" from "repeated, explicit focus on [DJ plaintiff's] proprietary technology").

Here, like in *DataTern*, *Amazon*, and other district court decisions, the fact that Cohen did not directly contact Applied or directly accuse Applied of infringement does not defeat declaratory judgment jurisdiction.  As in those cases, Cohen's allegations against TSMC rely exclusively on

---

[3] The court also noted that Amazon's obligation to indemnify its customers created a separate basis for declaratory judgment jurisdiction.  *See Amazon*, 2015 WL 3486494, at *6.

material taken from Applied's Volta Animation depicting the operation of Endura Volta.  Cohen

does not rely on any other third party's material.  And, as alleged, Applied performs the allegedly

infringing method during its development and testing of Endura Volta units.  *See* Compl. ¶ 13.

Thus, Cohen's infringement allegations against TSMC—which rely primarily on Applied's Volta

Animation—are sufficient to create an actual controversy between Applied and Cohen as to whether

Applied directly infringes the patents-in-suit.  *See Microsoft Corp. v. GeoTag, Inc.*, No. CV 11-175-

RGA, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014) ("It is entirely possible that a customer and

vendor can both directly infringe a patent based upon the same conduct."), *aff'd on other*

*grounds*, 817 F.3d 1305 (Fed. Cir. 2016).

        Furthermore, there exists a substantial controversy regarding whether Applied indirectly

infringes the patents-in-suit through its inducement of TSMC.  *See DataTern*, 755 F.3d at 905 ("[T]o

establish a substantial controversy regarding inducement, there must be allegations by the patentee

or other record evidence that establish at least a reasonable potential that such a claim could be

brought.").  As alleged in Cohen's TSMC Complaint, Applied has provided TSMC with Endura

Volta—i.e., "the necessary components to infringe" the patents-in-suit, *see id.*—as well as the Volta

Animation—i.e., instructions "for using the components in an infringing manner."  *See id.*; *see also*

Compl. ¶¶ 14 ("TSMC purchased Endura Volta from Applied and uses Endura Volta to fabricate

metallic interconnects."), 15 ("Applied created the 'Volta Animation' that is cited throughout

Cohen's complaint and has published the Volta Animation on its website.").  Though Cohen argues

that his infringement assertion against TSMC is based solely on TSMC's sale of the accused chips,

*see* Mot. at 11, he expressly alleges in the TSMC Complaint that TSMC infringes the patents-in-suit

by fabricating or making the chips using Applied's equipment:

> 107.    Upon information and belief, TSMC knew of, or was willfully blind towards,
> its infringement of the patents-in-suit at least since it began ***fabricating*** Huawei
> Chips, Apple Chips and Other 16nm and 20nm Chips.

> 108.    Since becoming aware of, or being willfully blind towards, its infringement of
> the patents-in-suit, TSMC has continued to intentionally, actively, and knowingly
> ***make***, use, sell, offer to sell, and/or import one or more of the Accused Chips through
> its retailers, resellers, and distributors, as well as in other ways.

TSMC Complaint ¶¶ 107–08 (emphasis added).  Given that Cohen's exemplary claims are directed toward methods of manufacturing, his allegations of TSMC's infringing "sales" in fact fall under 35 U.S.C. § 271(g), which requires the practice or use of an allegedly infringing method abroad.

Accordingly, there is a substantial controversy sufficient to support declaratory judgment jurisdiction regarding Applied's direct infringement and regarding its induced infringement of the patents-in-suit based on TSMC's alleged direct infringement.

**B.     Cohen's Attempts to Avoid Jurisdiction Are Unavailing**.

Cohen's arguments that no controversy exists are unpersuasive.  *First*, Cohen argues that Applied "has not alleged *any* contact with Dr. Cohen in its Complaint."  Mot. at 8 (emphasis in original).  However, as discussed above, direct contact with the patentee is not a prerequisite to finding jurisdiction.  *See DataTern*, 755 F.3d at 903; *Amazon*, 2015 WL 3486494, at *5 ("At the outset, the Court notes that there is no allegation here that Straight Path ever communicated directly with Amazon in any way, nor that Straight Path ever directly threatened Amazon with suit."); *see also ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) ("[A] specific threat of infringement litigation by the patentee is not required to establish jurisdiction . . . .").

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011), cited by Cohen, is readily distinguishable.  First, that case was decided before the Federal Circuit's *DataTern* decision.  Second, the *Proofpoint* court never held, as Cohen argues, that direct contact with the patentee is required to assert DJ jurisdiction.  *See* Mot. at 8, 10 (quoting *Proofpoint*, 2011 WL 4915847, at *3).  Rather, the *Proofpoint* court found that, analyzing all of the circumstances, there was no affirmative act directed at the DJ plaintiff, including no direct contact.  Third, there were no relevant infringement allegations giving rise to a direct controversy between the parties.  To the contrary, "the only allegations in the Texas Action Complaint that directly implicate [DJ plaintiff] Proofpoint—those against Proofpoint's customer Rent-A-Center, Inc.—were dismissed with prejudice by joint motion."  *Id.* at *5.  Fourth, in *Proofpoint*, there was no allegation that Proofpoint itself used the allegedly infringing method.  *Id.* Under those circumstances, the court concluded that, "the fact that [the patentee] InNova named ten supplier defendants in the Texas Action but did not include Proofpoint, ***and then dismissed the only***

12

1   ***claims in which Proofpoint was directly accused*** indicates that InNova may not intend to bring an

2   action against Proofpoint at all." *Id.* (emphasis added).[4]   That is simply not the case here.  Cohen's

3   only operative infringement allegations against TSMC are based on Applied's Endura Volta product

4   and Volta Animation, and Applied alleges that it uses the same allegedly infringing method.

5          *Second*, Cohen argues against declaratory judgment jurisdiction because he "is unaware of or

6   has not investigated any activity by AMAT that would transform the use of its equipment by others

7   into an act of infringement by AMAT."  Mot. at 9.  However, as the Court has previously

8   recognized, Cohen's awareness of, or investigation into, Applied's infringement is irrelevant to the

9   declaratory judgment jurisdiction analysis:

10          Finally, it is worth noting that one factor that the Federal Circuit has explicitly
     rejected as a consideration is

11

12          ***whether [the patentee] had conducted an adequate investigation or whether it
     subjectively believed [the other party] was infringing.***   "The test [for declaratory

13   judgment jurisdiction in patent cases], however stated, is ***objective*** . . . ."  "Indeed,
     it is the objective words and actions of the patentee that are controlling."  Thus,

14   conduct that can be reasonably inferred as demonstrating intent to enforce a patent
     can create declaratory judgment jurisdiction.

15   *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1089 (N.D. Cal. 2013)

16   (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009)) (bold

17   emphasis added).  Regardless of his purported subjective beliefs, Cohen's objective words and

18   actions—including his continued assertion of infringement against TSMC based on TSMC's use of

19   Applied's Endura Volta product as described in the Volta Animation—create an actual controversy.

20          Related to this point, Cohen asserts that Applied has attempted to manufacture jurisdiction

21   based on non-public information relating to its testing.  *See* Mot. at 9.  To be clear, it is ***Cohen's***

22   objective actions—and not actions taken by Applied—that have created subject matter jurisdiction.

23   Nevertheless, his assertion as to non-public information makes little sense.  The Volta Animation is

24   publicly available via YouTube (which is why Cohen was able to find it in the first instance), and it

25

26   _____
     [4] Cohen argues that "[t]he Court in *Proofpoint* concluded that InNova's suit against Proofpoint's
     customers, without accusing Proofpoint, actually weighed *against* a case and controversy, rather

27   than in support of it."  Mot. at 11 (emphasis in original).  Cohen misstates the *Proofpoint* court's
     decision on this point, as he fails to mention that the infringement allegations against Proofpoint's

28   customers had been dismissed with prejudice.

is reasonable for members of the public—including Cohen—to infer that Applied practiced the method described in a video that Applied itself provided to the public to inform potential buyers how its product could be used.

Moreover, the factual circumstances of the cases Cohen relies upon where courts found that a DJ plaintiff attempted to manufacture jurisdiction are simply not present here.  For example, in *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013), this Court found no DJ jurisdiction where the DJ plaintiff attempted to manufacture a controversy by requesting that the defendant provide a term sheet to license certain patents, including the specific patent at issue.  According to the Court, "the fact that Plaintiff rather than Defendant initiated this communication undermines the argument that this communication is evidence of Defendant's intent to enforce its patent rights against Plaintiff."  *Id.* at *10.  And in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, the Federal Circuit upheld the district court's decision finding no jurisdiction where the DJ plaintiff attempted to create jurisdiction "by initiating telephone conversations to employees of the patentee who were not in decision-making positions and who were not informed of the real purpose behind the conversations."  599 F.3d 1377, 1381 (Fed. Cir. 2010).  Applied has engaged in no such conduct.

*Third*, according to Cohen,

> The complaint contains no allegations as to whether the cited testing or development involves performance of all the relevant steps of Dr. Cohen's claims as described in Dr. Cohen's allegations against TSMC.  It does not specifically allege that the particular testing relevant to Dr. Cohen's allegations against TSMC took place in the United States.  Nor does it even allege that the activity occurred during the 6-year window for which Dr. Cohen could sue for infringement.

Mot. at 9.  This argument completely ignores the reasonable potential that Cohen could bring a claim for induced infringement against Applied based on TSMC's use of Endura Volta.  *See DataTern*, 755 F.3d at 905.

Moreover, Applied has, in fact, alleged that during development and testing of Endura Volta it performed the very same "method accused by Cohen in the EDTX Customer Suit of infringing the patents-in-suit," Compl. ¶ 13—namely, the method depicted and described in Applied's Volta Animation.  *See also id.* ¶ 11 ("The EDTX Customer Suit cites to and reproduces images from an

14

1    Applied 'Volta Animation' that Cohen contends shows a fabrication method of the Accused Chips'

2    metallic interconnects having a multiple seed layer structure comprising a patterned insulating layer

3    formed on a substrate, a tantalum layer, a cobalt layer, a copper layer, and an electroplated metallic

4    layer of copper.").  As to location of the relevant development and testing, Applied alleged that

5    "Endura Volta was developed and designed by Applied in California."  Compl. ¶ 13.  And finally, as

6    to the relevant timeframe, taking the allegations of the Complaint in the light most favorable to

7    Applied, *see, e.g.*, *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) (citation omitted), the Court can

8    reasonably infer that development and testing of Endura Volta occurred within the past six years.

9    Cohen himself alleges that Endura Volta "was introduced by AMAT on May 13, 2014."  TSMC

10   Complaint ¶ 57; *see also* Compl. ¶ 10.  Given this alleged introduction date, the development and

11   subsequent testing of Endura Volta can be reasonably inferred to have taken place within the six

12   years prior to August 28, 2017.

13        In sum, Cohen's reliance on Applied's Endura Volta product and the Volta Animation to

14   allege infringement against TSMC is sufficient to support declaratory judgment jurisdiction over

15   Applied's Complaint.  There exists an actual and real controversy between Applied and Cohen as to

16   whether the use of Applied's Endura Volta infringes the patents-in-suit.

17        **C.      The Court Should, in Its Discretion, Exercise Jurisdiction Over Applied's Case**.

18        As there exists an actual controversy between Applied and Cohen, the Court should assert

19   jurisdiction over Applied's declaratory judgment claims.  Because all of Cohen's, TSMC's, and

20   Applied's claims are now before the Court, there is no reason—based on judicial efficiency or

21   otherwise—for the Court to decline to exercise jurisdiction.

22        As before, Cohen's reliance on *Proofpoint* here is misplaced.  *See* Mot. at 12.  There, the

23   court declined jurisdiction in favor of an earlier case pending in Texas, citing judicial efficiency

24   concerns underlying the first-filed rule and the transfer analysis.  *See Proofpoint*, 2011 WL 4915847,

25   at *7.  The court also noted the risk of inconsistent decisions, given that a claim construction order

26   was pending from the Texas court.  *Id.*  Rather than exercise jurisdiction under those circumstances,

27   the *Proofpoint* court "encourage[d] Proofpoint to move to intervene in the Texas Action or bring a

28   separate action for declaratory judgment in the Eastern District of Texas and seek to relate that claim

15

to the Texas Action." *Id.* Here, unlike *Proofpoint*, Cohen's infringement case has already been transferred from the Eastern District of Texas—voluntarily by Cohen via stipulation—to this Court. Accordingly, there is no judicial efficiency to be gained by declining jurisdiction, as the Court is in a position to adjudge all of the parties' related disputes. Given that, there is no risk of inconsistent rulings or judgments if the Court exercises jurisdiction. In fact, the situation here is entirely consistent with Judge Koh's second suggestion in *Proofpoint*: Applied already has filed a separate DJ action in the same Court as the TSMC cases and has sought to relate its DJ action to the TSMC cases. *See id.*

## IV. CONCLUSION

For the reasons stated above, there exists a current, actual, and justiciable controversy between Applied and Cohen as to whether the use of Applied's Endura Volta infringes the patents-in-suit. Accordingly, Cohen's motion to dismiss should be denied.

Dated: January 8, 2018

Respectfully submitted,

By: /s/ *Brett M. Schuman*
Brett M. Schuman
*bschuman@goodwinlaw.com*
GOODWIN PROCTER LLP
Three Embarcadero Center
San Francisco, CA 94111
Tel.: (415) 733-6000
Fax.: (415) 677-9041

Andrew S. Ong
*aong@goodwinlaw.com*
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: (650) 853-3100
Fax.: (650) 853-1038

Attorneys for Plaintiff
Applied Materials, Inc.

1

## CERTIFICATE OF SERVICE

2        I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3 United States District Court for the Northern District of California by using the CM/ECF system on

4 January 8, 2018.  I further certify that all participants in the case are registered CM/ECF users and

5 that service will be accomplished by the CM/ECF system.

6        I certify under penalty of perjury that the foregoing is true and correct.  Executed on

7 January 8, 2018 in San Francisco, California.

8

                                /s/ *Brett M. Schuman*

9                                  Brett M. Schuman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 3:17-CV-04490-EMC