Pages 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

| | |
|---|---|
| APPLIED MATERIALS, INC., )<br>)<br>      Plaintiff, )<br>  VS. )<br>)<br>DR. URI COHEN, )<br>)<br>      Defendant. )<br>_____) | NO. C 17-4990 EMC |
| TSMC NORTH AMERICA, et al., )<br>)<br>      Plaintiffs, )<br>  VS. )<br>)<br>DR. URI COHEN, )<br>)<br>      Defendant. )<br>_____) | NO. C 17-5001 EMC |
| DR. URI COHEN, )<br>)<br>      Plaintiff, )<br>  VS. )<br>)<br>TSMC NORTH AMERICA, et al., )<br>)<br>      Defendants. )<br>_____) | NO. C 17-6451 EMC |

San Francisco, California
Thursday, February 8, 2018

**TRANSCRIPT OF PROCEEDINGS**

**Reported By:  BELLE BALL, CSR 8785, CRR, RDR**
**            Official Reporter, U.S. District Court**

(Appearances, next page)

<u>APPEARANCES</u>:

For Applied Materials, Inc.:
                GOODWIN PROCTER LLP
                Three Embarcadero Center
                San Francisco, California  94111
       BY:  **BRETT M. SCHUMAN, ESQ.**

                GOODWIN PROCTER LLP
                135 Commonwealth Drive
                Menlo Park, California 94025-1105
       BY:  **ANDREW S. ONG, ESQ.**

For Dr. Uri Cohen:
                CALDWELL CASSADY CURRY
                2101 Cedar Springs Road
                Suite 1000
                Dallas, Texas  75201
       BY:  **CHRISTOPHER S. STEWART, ESQ.**

                PREBEG FAUCETT AND ABBOTT PLLC
                8441 Gulf Freeway.
                Suite 307
                Houston, Texas  77017
       BY:  **CHRISTOPHER M. FAUCETT, ESQ.**

For Taiwan Semiconductor Manufacturing Company, Ltd. and TSMC
North America:
                Keker, Van Nest & Peters LLP
                633 Battery Street
                San Francisco, CA 94111-1809
        BY:  **BRIAN L. FERRALL, ESQ.**

For Huawei Device (Dongguan) Co., Ltd.:
                MORRISON & FOERSTER LLP
                755 Page Mill Road
                Palo Alto, CA 94304
       BY:  **RUDOLPH KIM, ESQ.**

**Thursday - February 8, 2018**                                    **1:41 p.m.**

                                 P R O C E E D I N G S

THE CLERK:  Calling Case C-17-4990, Applied Materials versus Cohen.  And also C 17-5001, consolidated with 17-6451, TSMC versus Cohen.

Counsel, please come to the podium and state your name for the record.

MR. SCHUMAN:  Good afternoon, Your Honor.  Brett Schuman from Goodwin Procter on behalf of the plaintiff, Applied Materials.  I have with me today Andy Ong, also from our firm.

THE COURT:  Thank you.  Good afternoon.

MR. STEWART:  Good afternoon, Your Honor.  Chris Stewart of Caldwell Cassady Curry on behalf of Dr. Cohen.  And my co-counsel is Chris Faucett of Prebeg Faucett & Abbott.

MR. FAUCETT:  Good afternoon, Your Honor.

THE COURT:  All right, welcome.

MR. FERRALL:  Good afternoon, Your Honor.  From the TSMC case this is Brian Ferrall, Keker, Van Nest & Peters on behalf of TSMC.

THE COURT:  Okay.

MR. KIM:  Good afternoon, Your Honor.  Rudy Kim of Morrison and Foerster on behalf of the Huawei defendants in the consolidated 5001 action.

THE COURT:  All right.  Thank you.

All right.  Let's address the Applied Materials, the

defendant's motion to dismiss for lack of case or controversy, thank you.

The action for declaratory relief, Paragraph 22, states the following:

"In the EDTX Customer Suit Complaint, Cohen alleges that TSMC's use of Endura Volta infringes at least claim 26 of the '668."

And it also goes on to make similar allegations with respect to the '226, claim 4 of the '052 and claim 18 of the '445.

Is that a fair characterization of the customer suits?

**MR. STEWART:**  Your Honor, Chris Stewart on behalf of Dr. Cohen.

No, it's not.  As we've explained in our briefing, the allegations in the -- what they call the Customer Suit Complaint against TSMC allege direct infringement by TSMC by their sale and offer for sale of completed chips.

Based on the allegations in the complaint by Dr. Cohen against TSMC, the understanding of how this process works is that TSMC uses semiconductor manufacturing tools like those provided by Applied Materials overseas to make chips, using the process that is patented in Dr. Cohen's patents, and resulting in structures that are parented in Dr. Cohen's patents.  But that activity happens overseas.

So, being careful in how we constructed our complaint, we did not accuse that of direct infringement, because it's

extra-territorial.  Our complaint proceeds to only accuse TSMC of direct infringement when they subsequently sell those completed chips down the stream of commerce into the United States.

THE COURT:  So it's the actual chip and the structure of the chip that's infringing, not the process by which those chips are manufactured.

MR. STEWART:  That's right.  The claims or the allegations of infringement of the method claims are under 271(g) for the importation and use in the United States of a product made by that process but those allegations would be against the downstream customers like Huawei who import the completed chips into the United States, having been made overseas.

THE COURT:  So if you look at the Customer Suit against TSMC, Paragraph 58 states (As read):

"On information and belief, the method utilized by TSMC to manufacture the accused chips and the resulting structure of the accused chips, themselves, are consistent with the methods and structures as explained by TSMC in its IE paper."

I mean, there's reference there to both the method of manufacture, as well as the resulting structure.

MR. STEWART:  That's right, because the method that, on information and belief, TSMC uses overseas would, if conducted in the United States, practice the patents.

Therefore, as a predicate to accusing the downstream customers like Huawei of importing the chips made by the infringing method, we have to, of course, show that the infringing method or the method that's conducted overseas would otherwise infringe.

THE COURT:  And isn't that method Applied's method?

MR. STEWART:  Your Honor, we cited a number of different pieces of evidence to support our complaint that TSMC uses these methods and produces these chips, including reverse-engineering analysis of TSMC's own chips and literature by TSMC about their process.

We think that what they use and what we allege in the complaint is that they use Applied Material's equipment as part of that infringement.  And that Volta Animation that we cite in our complaint is an exemplar of what we think TSMC actually does with their equipment overseas.

THE COURT:  Other than the overseas question, would the use of that method as depicted in the TSMC suit, which comes -- appears to come right out of the animation, would that be infringing?

MR. STEWART:  The method as depicted in the animation, yes, would be infringing.  I think there's questions as to whether Applied Materials is actually the one that provides all of the components that are actually acted upon by their equipment.

So there may be some independent activity by just TSMC that

they provide, you know, the raw materials that go into the chambers for creation and so forth.

But yes, in general terms, that method is the infringing method.

THE COURT:  So why isn't that enough at least to state a case or controversy?  It's pretty concrete, the method that is cited here, and used in the Customer Suit appears to be exactly the method that is at issue or that is -- supposedly comes from Applied.  And that a number of the patents address themselves to the method of making multi-seed layers for metal interconnects, et cetera, et cetera.

I don't see why -- if that's going to be at issue in the Customer Suit, how we can say there's not enough of a concrete dispute here between Applied and Dr. Cohen.

MR. STEWART:  Your Honor, it comes down to the allegations of the complaint, and whether they actually rise to the level of creating a real and immediate threat of a suit for infringement by Applied Materials.

It's not enough that simply the behavior alleged is something that Applied contributes to in some way, because if it's not actionable, there is no way for Dr. Cohen to actually sue Applied for it.

THE COURT:  And the reason why it's not actionable is what?

MR. STEWART:  Because based on the allegations in the TSMC complaint by Dr. Cohen, that activity is something that occurs

overseas.

THE COURT:  That's the only reason why it's not actionable is because it occurs outside the jurisdictional --

MR. STEWART:  Right.  Because the only activity they allege they would have done that could arguably infringe their private testing is something that when challenged on in our motion, they couldn't even identify as having occurred within the limitations period.

So the only United States activity that Applied Materials does that they say they have a threat of being sued for is something that occurred presumably outside of the six-year limitations window, meaning Dr. Cohen could not sue for that, for infringement of the United States patent for that activity. There is simply no --

THE COURT:  Have you discussed with Applied whether you can resolve this by providing a covenant not to sue?

MR. STEWART:  No, Your Honor.  That question was asked.  We deferred, and said we didn't want to discuss that at that point.

And I think the reason that it's perfectly fair for us to defer and not want to have that discussion is because that's sort of the point of the jurisdictional limitation on declaratory judgment suits.  You can't hail someone into court without a jurisdictional basis first, and then say:  Hey, now that we already have you under the gun in a lawsuit we shouldn't have brought, covenant not to sue us for anything that you may

or may not know about.

THE COURT:  Well, you don't need a lawsuit -- you don't need a pending suit in order to give a covenant not to sue --

MR. STEWART:  I'm sorry?

THE COURT:  You don't need an existing lawsuit and jurisdiction over that lawsuit in order to form a covenant not to sue.  You could do that right now.

MR. STEWART:  I agree, Your Honor.  But the problem is that they've obviously shown an inclination to file a declaratory-judgment action based on comments that don't even actually rise to a level of giving jurisdiction --

THE COURT:  Well, since you're not planning to sue anyway, and since you admit there's no jurisdiction, there's no basis, there's no right of action, why not essentially moot the issue out by giving a covenant not to sue?  That would take care of it, wouldn't it?

MR. STEWART:  Your Honor, the problem is that as the Federal Circuit stated in *Microsoft v. DataTern*, there is no right for a potential defendant to hail a plaintiff into court and demand that on their terms, with their timing, with their chosen forum, they answer for all theoretical infringement.

We are not prepared to have that conversation, and nothing in the complaint that we actually served on TSMC tees up that conversation, to be had right now.  So the focus of the jurisdictional analysis is on the actual allegations in the

complaint that Applied Materials says forms the basis of their suit.

On the basis of that complaint, there is nothing actionable. But that doesn't mean we should be forced to have a conversation about something broader, and forced to distract ourselves from the case at hand to evaluate some broader potential --

**THE COURT:**  That's one interpretation.  The other interpretation is that there is something there, and you don't want to give it up.  Because it's not clear to me -- you say distract yourselves.  Well, come on.  Distract yourself by putting a few hours of attorney time into a covenant not to sue, which I'm sure your firm has done a thousand times.  It's not that complicated.

So what's the real reason?

**MR. STEWART:**  Your Honor, the reason --

**THE COURT:**  Yeah.  Theoretically, you think they don't belong here, and therefore you don't have to give them a covenant to not sue.  If it's at least debatable, why not moot it out?  Why not put your money where your mouth is?

**MR. STEWART:**  I think the problem is that it is at least debatable.  They've indicated, when we first offered:  Hey, let's just streamline things, we'll allow you to intervene on a limited basis in the TSMC case and you non-suit your declaratory judgment suit, they came back and said:  No, we want to keep it broader.  We think there's a broader dispute, and so we want to

keep it broader and force you to have to evaluate all of the potential infringement --

THE COURT:  What's the intervention -- tell me more about the intervention possibility.

MR. STEWART:  So when we first saw their declaratory-judgment action, we said:  Listen, you can move to intervene in a limited capacity.

THE COURT:  And what does that mean, "limited capacity"?

MR. STEWART:  It means they would intervene solely to defend or help defend TSMC against the allegations made against TSMC, but would not have their own independent cause of action for some broader declaratory judgment of infringement unrelated to TSMC's activity.

And so that was the proposal we offered.  You intervened just on that limited basis.  So we're still just fighting the specific allegations we have actually made against TSMC, and not fighting some broader set of allegations we have not investigated.

THE COURT:  What would some of those broader allegations be, beyond what might be at issue in the TSMC suit?

MR. STEWART:  Your Honor, I'm hesitant to say, simply because having to answer that question would potentially open the door if I was a little loose-lipped into maybe some other declaratory judgment basis they would try to find.

And that's, again, I think the reason why you have to

evaluate this just on the basis of the complaint that exists. Because forcing us to have a conversation publicly about what other infringement might be out there just maybe invites another declaratory-judgment action.

And that's the unfairness here in allowing them to come and sue without jurisdictional basis, and then asking us to litigate a broader set of potentialities.

THE COURT:  Let me hear the counter.  Why there doesn't seem to be -- at least there's an argument here there's no real-life argument for a case or controversy, partly because the alleged infringing activity, if it is, has occurred outside the jurisdiction of this Court, or the United States?

MR. SCHUMAN:  Brent Schuman on behalf of Applied Materials, Your Honor.

I think, if I can respond to that, but also a few other things that counsel said, because we are dancing around a couple of different issues here.

With respect to the direct infringement by Applied Materials, the testing, I think the Court absolutely picked up on the right point.  We raise the topic of a covenant not to sue.  Why not just give us a covenant not to sue.  And they're dancing around that.

The main case that they rely on Your Honor, in their papers, the *Sierra Applied Sciences versus Advanced Energy Industries* case, this is a Federal Circuit case.  This is the case they

rely on for the proposition that our testing and use of this allegedly infringing method here in the United States can't form the basis for DJ jurisdiction.

In that case, the lawyer for the patentee gave a covenant not to sue.  Stood up in open court and made the exact admission that you just asked counsel to make, and he wouldn't make.

The basis for finding no DJ jurisdiction -- this is from Page 375 of the Federal Circuit's opinion -- was because AEI -- that was the party in the position of Dr. Cohen -- stated in District Court and at the Federal Circuit, that they had no intention and would not sue the plaintiff in that case.  And the Court found, the Federal Circuit found:

> "This estoppel in turn removes from the field any controversy sufficiently actual to confer jurisdiction."

I would note this case was pre-*MedImmune*.  So, under an even stricter standard.

But that's how Dr. Cohen can deal with the allegations in our DJ complaint around the testing that Applied Materials actually did of the allegedly infringing method in the United States.

There's an argument in the reply brief.  They make a big point about how we did not allege explicitly that this testing took place within six years prior to the filing of the DJ complaint.  We thought that was sufficiently inferred from

Dr. Cohen's allegation that the Volta product was released in May of 2014.

But if necessary either for Dr. Cohen or for the Court, we can make clear that the testing that we're referring to did, in fact, occur within the last six years.

THE COURT:  Tell me about the within-the-United-States question.

MR. SCHUMAN:  Turning to that right now, Your Honor.

So that's the *Microsoft versus DataTern* case.  Both parties agreed that that Federal Circuit case is controlling.  Wasn't mentioned in their moving papers.  We raised it in our opposition.  And they deal with it in their reply.

And in that case, Microsoft, in the position of Applied Materials here, its customers got sued, and Microsoft stepped in and filed a DJ complaint.  Exactly what Applied Materials did here.

I think Dr. Cohen in his reply characterizes that case as being limited to instances where the direct infringement allegation is use of an infringing method.  I don't think the Federal Circuit's case -- decision is so limited at all.

The Federal Circuit -- and this is relying on the prior *ARRIS versus British Telecom* case -- there's a series of these cases, Your Honor.  When the allegations against the customer are sufficient to give rise to a controversy around possible indirect infringement by the supplier -- and that could come in

the form of contributory infringement or induced infringement -- that's sufficient to confer DJ jurisdiction.

Reasonable apprehension of suit is no longer the standard, Your Honor.  That's the pre-*MedImmune* standard.  I'm sure the Court is aware of that.  But it is still a factor.

So one way to articulate this is:  Does the complaint against Applied's customer give rise to a reasonable apprehension by Applied of suit by Dr. Cohen?

And I think the Court accurately captured the allegations in the complaint.  Paragraph 58 of the complaint -- and I think Dr. Cohen's counsel clearly confirmed right here during his argument, they're saying that the method is practiced using the Applied-supplied tools according to the Volta Animation, which is, of course, supplied by Applied.

That is the entire basis for the operative allegations of the complaint against TSMC.

**THE COURT:**  Is that enough to raise a specter of indirect infringement or inducement?

**MR. SCHUMAN:**  Yes, it is, Your Honor.  And now I have to be careful, right, because I'm not here to volunteer an indirect-infringement claim against my client.

But the standard -- and this is right out of *DataTern* -- we are not required to prove that there is a viable indirect-infringement claim against our client.

Your Honor, as Your Honor correctly noted, these are method

claims, by and large.  The '668 patent is a structure made by using the method.  All three of the other patents are method claims.  Method claims can only be infringed by use of the method.

And I think Dr. Cohen's counsel confirmed that their allegation, their infringement case against TSMC is based on TSMC using the method, using Applied's equipment, in -- in conformity with Applied's Volta Animation.

And what counsel said is:  But we think TSMC does that overseas, and so we were careful to avoid the extra-territoriality.

THE COURT:  What about that?

MR. SCHUMAN:  271(g), Your Honor.  That is infringement -- that is an infringement allegation under 271(g) of 35 U.S.C. That's what this case is about, Your Honor.  That's the basis.

It is the only plausible basis, Your Honor, for the direct infringement claim against TSMC.  You can't infringe a method claim by selling a product.  You only infringe a method claim by practicing the method.

So what Dr. Cohen is saying:  TSMC infringes the method by practicing the method overseas, and then imports the finished product into the United States.

35 U.S.C. 271(g) says (As read):

"Whoever, without authority, imports into the United States or offers to sell, sells, or uses within the

United States a product which is made by a process patented in the United States shall be liable as an infringer."

So the direct-infringement theory, Your Honor -- and again, I think Dr. Cohen was coy about this in his pleading.  Because if you look at Paragraph 79 of the complaint against TSMC, he doesn't specify the statutory basis there.  In Paragraph 79, he says (As read):

"TSMC directly infringes at least one claim of each of the patents-in-suit, either literally or under the Doctrine of Equivalents, by selling and/or offering for sale within the United States the accused chips."

Doesn't say "271(a)."  It also doesn't specify 271(g).  The only viable theory here, Your Honor, if, as Dr. Cohen's counsel just said is that these methods are practiced overseas, is 271(g).  They make it overseas, then they import it into the United States.

So the question, bringing this back to the DJ jurisdiction question, is whether that type of direct infringement against TSMC carries an implied threat of direct infringement against -- I'm sorry, an implied threat of indirect infringement against Applied Materials.

THE COURT:  And that's your main concern is the indirect through inducement or --

MR. SCHUMAN:  Sure.

**THE COURT:**  And what's your concern?  I know you don't want to make their case, but with respect to encouragement, et cetera, et cetera, what do you think they would cite if they were to bring suit, in order to round out their inducement claim?

**MR. SCHUMAN:**  Exactly what's in the complaint against TSMC. Applied Materials provides Volta, the chambers for performing the steps, CVD chamber, PVD chamber.  Applied, my client, provides the equipment to TSMC.  Applied, my client, provides the animation.

And that is what Dr. Cohen uses in his complaint.  If you take a look, for example, Your Honor at Paragraph 122, that's just the operative allegations for the '226 patent, every single element when he goes through and pleads his plausible claim for relief, barrier layer?  Cite the Applied Volta Animation.  First seed layer, cite the Volta Animation.  Second seed layer, cite the Volta Animation.  Electroplating, cite the Volta animation.

It's all directed to Applied Materials.  And I don't think Dr. Cohen can try to sideline Applied Materials, the supplier of the equipment, of the animation, by saying:  Well, we're just alleging infringement for importation or sale.

Under 271(g), that's the direct-infringement theory, and Applied certainly has a reasonable basis for being concerned about an indirect infringement theory based on that type of direct infringement.

**THE COURT:**  All right.  Give you a chance to respond.

**MR. STEWART:**  Thank Your Honor.

To that last point about the actual acts of infringement that are being accused in the TSMC complaint, whether it's under 271(g) or 271(a), there is no question that the actual activity that creates an act of infringement by TSMC, direct infringement, is their sale of the completed chips in the United States.  Even if it's under 271(g), it's use, importation or sale of a product made by the patented process into the United States.

So unless Applied Materials is going to allege -- and they haven't in their complaint -- that they not only encourage their customers like TSMC to use their machines in a certain way to make the chips, but then they also help them sell them down the stream into the United States, into Huawei or --

**THE COURT:**  Oh, so you're saying there can be no indirect infringement such as inducement unless the facilitator not only supplied the necessary process which, itself, could be infringing, provided all the instructional materials, and facilitated, but they actually have to encourage or somehow facilitate the actual act of importation.

**MR. STEWART:**  The act of infringement, right.  The act of importation.  I'm aware of no case that says you can induce an infringing activity that's three steps removed from whatever equipment you would actually --

**THE COURT:** I don't know about three steps removed. It's one step removed. They have the infringing stuff, and it becomes infringing once imported in the U.S.

But you're saying somebody who does everything up to that point, all the technology, allegedly in violation of your clients' intellectual property rights, nonetheless cannot be liable for inducement unless they were somehow involved in facilitating or encouraging the actual importation, which is the last step, for instance, under 271(g).

**MR. STEWART:** That's right, Your Honor. That would be news to us.

**THE COURT:** Give me a case that says that inducement requires inducement as to every step along the way.

**MR. STEWART:** Your Honor, I don't have a case to cite for you on that specific proposition, but by extrapolation from the cases they, themselves, cited in support of their claim like *Microsoft v. DataTern*, you can infer that very fact. Because in those cases, the customers who were sued and accused of infringement were sued or accused of infringement by use of Microsoft and SAP's software.

Microsoft and SAP provided the software; provided user guides on how to use the software. And the declaratory-judgment defendant had sued the customers for that use of that software. One step removed from what Microsoft and SAP did. It's inducement of the direct infringement.

I think it would take me a minute to turn to it but the quote in *Microsoft v. DataTern,* which in turn quotes the *ARRIS* case, says that a case in controversy may lie if a customer is sued for use of the supplier's product.

It's talking about that direct connection between what they could be reasonably accused of inducing, and what the accusation of infringement actually is.

**THE COURT:**  Of course, it begs the question:  What did Allied think they're going to do with this product?  I mean, if they -- if you believe the allegation -- did everything to facilitate the actual production of the infringing chips, it doesn't take much to infer that they knew this was going to be sold and commercialized in some way.

Probably not a huge leap to guess that TSMC would, among other things, sell to manufacturers in the United States.  It's a large part of the market.

**MR. STEWART:**  But Your Honor, I think inducement, as least as I understand it, is a more exacting analysis than that.  You actually have to have a specific intent to cause infringement of the patent.

They haven't alleged any of the facts that you just recited in their complaint, for sure.  Because they haven't even alleged that they knew about the patent and specifically encouraged TSMC to perform these infringing methods.

For all we know, these chambers that they sell to TSMC could

have multiple different uses, that they don't even necessarily encourage the one specific one that we cited in the Volta Animation.

THE COURT:  Let me ask you, what about this argument that there was no inducement to actually import the final act that would constitute the direct infringement by TSMC, assuming these chips were manufactured offshore, that there's no allegation that Applied had a role in the actual final element, let's say, of the 271(g)?

MR. SCHUMAN:  I would like Dr. Cohen's counsel to cite a case that says that, and then my client is off the hook for indirect infringement.

THE COURT:  Do you have any cases to the contrary?

MR. SCHUMAN:  I will tell you that we looked for those cases.  And I don't think there is the case that you asked Dr. Cohen's counsel to find, which is exactly why the direct-infringement claim against TSMC does in fact create a controversy as to Applied's indirect infringement.  We don't have that firewall of a case that says:  You can't be liable for inducing infringement under 271(g).

The other point I would add, Your Honor, is 271(g), the act of direct infringement includes the act of manufacturing. Right?  It's the -- 271(g) as I think you pointed out, it's not just the importation, but it's the -- the use of a method that if it had been done in the United States, would be infringing.

So 271(g) contemplates exactly this situation.

**THE COURT:**  All right, so we have a situation where it appears that neither side has what it sounds like dispositive authority on whether every single element or not of an inducement claim against Applied has been met.  We don't know that at this point.  At least, I'm not hearing anything that's singularly clear, determinative and dispositive that that possibility still exists.

That then suggests there's enough of a case in controversy. I mean, for purposes -- part of the purpose of the case in controversy requirement is to have concreteness.  And to have a real, live controversy.  And just this discussion tees up some of the issues that a court -- this Court would have to adjudicate.

So, you know, from that perspective, it seems to me this is a sufficiently concrete dispute that is subject to the adjudicatory process.

It also appears to me that there is enough of a specter here -- everything else is teed up.  There may be an element here or there about whether or not a claim would actually lie, for instance, for indirect infringement.

But it certainly seems quite real.  And 95 percent of it is already teed up in the TSMC case.  So I am having trouble, frankly, finding why there isn't a sufficient case or controversy.  And why it doesn't make sense to consolidate this

case with the others.

MR. STEWART:  Can I respond briefly to those remarks, Your Honor?

THE COURT:  Yeah.

(Reporter interruption)

MR. STEWART:  Yes, ma'am.

To the first point about this dispute over whether or not all the elements of inducement may or may not be met in the TSMC complaint, the *Microsoft v. DataTern* case, the Fed Circuit pointed out that specifically this analysis requires a detailed analysis, element by element, of the case to be made for inducement.

So I think, respectfully, the fact that one of the elements, in fact, the chief element in 271(g) infringement is not at issue, based on the complaint that Applied filed, and based on the complaint that we filed against TSMC actually militates against exercising of that case in controversy because of the exacting analysis the Fed Circuit said you're supposed to do.

And the second think I would point out is:  None of this was in their actual complaint.  This was all just sort of extrapolated in response to our motion to dismiss.

But there was not even an allegation in their complaint that they were seeking a declaratory judgment of no induced infringement.  In the Microsoft complaint in the *DataTern* case, there was that allegation.  They were actually specifically

seeking declaratory judgment of no induced infringement.  So even from a pleading perspective, I think Applied's DJ complaint fails.

And the last point I'll make to your final comment about the fact that this is 95 percent teed up, I just would remind the Court that part of the burden here, part of the reason we filed this motion is because we don't know what that percentage is that may or may not be teed up.

Until we do a full investigation and figure out what the scope of Applied's potential infringement is in all of its forms, not just with respect to TSMC, but potentially others, we don't know how much broader this case gets if we have to combat Applied Materials head-on about all of their potential infringement, without, you know, risking issue preclusion or joinder issues or something to that effect.

So the harm here is that we don't know what the rest of the case looks like.

THE COURT:  Well, let me ask you.  Their request for relief, the substantive requests A, B, C, and D seeks a declaration that the use of Endura Volta, the process performed by Endura Volta, and the metal interconnects fabricated by Endura Volta do not infringe on claim, you know, 4 of the '052, et cetera, et cetera.  Which obviously encompasses the TSMC.  There's an overlap there, it seems to me.

What else would be entailed by these four substantive

requests for declaratory relief that transcends the issues in TSMC?  Obviously, it involves other customers.  Okay.  But to the extent that the relief has to do with the devices, the use of Endura Volta, the processes performed by Endura Volta and the metal innerconnects fabricated by Endura Volta, what is your concern about raising other issues that aren't currently at play in the TSMC?

MR. STEWART:  Your Honor, my assumption is -- and again, I go back to the notion that part of the burden is having to figure out the answers to these questions when we were not actually seeking to answer those questions with our TSMC complaint.

But my guess is there's some law about compulsory counterclaims, and whether in response to this declaratory-judgment action, we would be required to assert any other counterclaims that we might have against Applied Materials related to this activity.  Which would mean we would affirmatively have to go out and potentially broaden the case if we discover that there is more of a dispute than just the core dispute of whether the chips made by Endura Volta practiced the claims.

THE COURT:  That you may have a -- a duty to bring a compulsory counterclaims that involve processes other than Endura Volta?

MR. STEWART:  Other than Endura Volta, or parties other than

the ones currently in the case, and potentially risk some additional declaratory-judgment actions, depending on how we plead those counterclaims.

Again, having to get into this in the first place is too risky and part of the reason why we feel that the complaint should be dismissed.  But that's just -- without being concrete, that's the best I can tell Your Honor, is that we are concerned that this case gets significantly broader than it currently is, than just a dispute between Dr. Cohen and TSMC's use of Applied Materials' equipment, in a way that is unfair to Dr. Cohen and not supported by his complaint against TSMC, which carefully focused exclusively on TSMC and its downstream customers.

**THE COURT:**  All right.  What is your response to that?

**MR. SCHUMAN:**  Well, real briefly, Your Honor, two points. Your Honor was sort of summarizing maybe some thinking about this motion.  And I think it's directly supported by the *DataTern* case.  I think we all agree that that's sort of the key case.

Page 905 of the *DataTern* case with regard to this core question of indirect direct infringement and implied threat of indirect infringement, Federal Circuit said (As read):

"Certainly it is not the case that definitive proof must exist that would establish each element.  But to establish a substantial controversy regarding inducement, there must be allegations by the patentee

or other record evidence that establish at least a reasonable potential that such a claim could be brought."

And I think that is exactly what the Court was talking about before Dr. Cohen's counsel's last points.

You do not need definitive proof that the DJ plaintiff meets every element.  There just needs to be enough there.

And I certainly think we have pled enough, and this argument has shown that there is enough there for Applied Materials to be concerned, and for there to be a substantial controversy around a threat of -- an implied threat of indirect infringement.

On this last point, about how much broader the case gets, I think -- I'm not about to give advice about the compulsory counterclaim rule here to Dr. Cohen's counsel.  But, if this complaint stands, if the motion to dismiss is denied and Dr. Cohen has to make a decision about how to plead in response, I think it's framed by what's in the DJ complaint (Indicating). And I think it's not all that ambiguous.

We have pled testing.  Dr. Cohen wants to give us a covenant not to sue and not litigate that question; he certainly can.  If not, the complaint sets forth no direct infringement because we practice this method here in the United States.  The complaint also very fairly encompasses -- it attaches the TSMC customer complaint.  And so I think, fairly construed, the case that Dr. Cohen has chosen to bring against TSMC is part of that case,

too.

As to how much broader I can be, I don't think it's worthwhile for us to stand here and speculate. But with respect to what Dr. Cohen has to do in response, you know, he has to plead in response to the DJ complaint that we brought.

MR. STEWART: Your Honor, may I make one more comment?

THE COURT: Briefly.

MR. STEWART: Just on the *Microsoft v. DataTern* case. And I think you didn't hear any answer that said: No, we think this will be limited just to the existing allegations if we go forward in our DJ complaint. I think that was effectively a concession that: Sure, this might actually get broader.

With the *DataTern* case, it's not as loose of an analysis as Applied's counsel is making it out to be. There were three patents at issue in that case. One allegation against SAP and one against Microsoft on the same patent, and another one against Microsoft on a second patent. The Federal Circuit said no case in controversy   existed as to one of those allegations because the claim charts used third-party user guides instead of Microsoft or SAP-issued user guides to show the supposed indirect infringement threat. The minor difference between Microsoft-authored user guides and a third-party user guide for software that concededly Microsoft and SAP was providing to its customers was enough to deprive the Court of jurisdiction for that one allegation, so it's a very, very exacting process and a

very fine line.

THE COURT:  Well, I argue that fine line at least in that regard is made here because there is no real difference between the illustrations in the EDTX customer suit and the animation.

MR. STEWART:  I'm talking about the fine line in this case between a sufficiently supported 271(g) inducement and the lack thereof.  That is a different fine line but under the Federal Circuit's guidance should be given the same exacting analysis to make sure that you're not forcing Dr. Cohen to answer to complaints or to potential claims --

THE COURT:  And the only thing I'm hearing that stands in the way that raises a question is the question of whether you need to plead and ultimately prove some level of encouragement or inducement with respect to, in this case, if it's a 271 type claim, the actual sale or importation, as opposed to the utilization of the process of making the chip.

MR. STEWART:  Right, a process that is concededly done overseas and outside the reach of the Patent Office.

THE COURT:  That's right, that's why there is a premium on this last point which you hinge and right now it seems to me that if there -- there is a reasonable potential here for suit because it's not clearly foreclosed, it seems to me, on this particular question, at least that's not been presented to me. And so, it seems to me that there's sufficient Article III jurisdiction.

**MR. STEWART:** Your Honor, if -- if that is the one piece that's hinging between granting or denying our motion could we be given an opportunity to research that specific question? The inducement requirement for 271(g) importation, in order to provide a supplemental brief and answer that specific question?

**MR. SCHUMAN:** Well, I would oppose Your Honor. I think this motion is fully briefed and we've now argue it for an hour. But you know, I, if the Court wants to give, wants further briefing and I'm not sure the outcome determines, if either given the direct infringement, no direct infringement allegations in our complaint, in other words there is a separate independent argument we've been addressing --

**THE COURT:** What's your direct infringement claim then?

**MR. SCHUMAN:** The direct infringement claim is pled Your Honor that the -- this exact method, we don't admit it infringes of course but the exact Volta method shown in the animation they allege that TSMC uses to infringe, this is Paragraph 13:

"Applied used that method in the United States to fabricate, in California actually, to fabricate metallic interconnects using various methods including the method accused by Cohen in the EDTEX's (Phonetic) customers' suit of infringing the patents in suit."

That's Paragraph 13 of our complaint and that's where I

started my --

**THE COURT:** So where it says Endura Volta was developed and designed by Applied in California, that's the --

**MR. SCHUMAN:** Yes.

**THE COURT:** That would be the basis for direct infringement?

**MR. SCHUMAN:** Yes. Or no direct infringement as the case may be, Your Honor. But yes, that's the -- I think this point, Your Honor, which, you know, they had two briefs, they were the moving party and didn't address this in their briefs. So I would oppose the supplemental briefing. But I also think it's a little bit beside the point because there's a separate basis here for DJ jurisdiction, which has also been briefed, which also now been discussed here today, that gives rise to a sufficient case or controversy.

**MR. STEWART:** Your Honor, may I respond?

**THE COURT:** Yes, about Paragraph 13.

**MR. STEWART:** So the problem with both of those arguments is that it is Applied's burden to show jurisdiction. With respect to the direct infringement allegation, we made a factual challenge to that in our motion, saying they haven't even described that it actually occurred within the limitations period. That was a factual challenge for them to come back and actually show proof by affidavit or even just an affirmative statement and attorney argument which may or may not have been sufficient, to say that yes, this did in fact occur within the

last six year and therefore -- would be actionable.

THE COURT:  Well, it's a fair inference based on the timeline.  They also say that if need be they are prepared to amend the complaint to expressly provide, so.

MR. STEWART:  Your Honor, respectfully I think the opportunity for further amendments of their complaint is waived. We made that express challenge in our motion and they did not respond.  It's a fact exclusively within their purview as to whether or not they tested something on a given time frame and in response to our motion they didn't come up with an affidavit or even an affirmative allegation, so, nor Your Honor did they ask for leave to amend.  They never requested any sort of opportunity to supplement with that fact.

So, I think, if -- unless their purpose is just to continue delaying this and have us to keep going back and forth, I don't know why they would not have put that fact in their original response.  So I feel like that argument is waived.  The same thing with respect to this issue of the inducement.  Again, this was their burden.  I understand that the Court doesn't want to hold them to a really, really heightened pleading standard and having to say that we encouraged this specific act or that specific act but for them to say that, well, we think it's sufficiently briefed and we shouldn't get another say at this one particular question, I think is sort of mischaracterizing who has the burden here.  Yes, it's our motion to dismiss but it

is their burden to show a case in controversy, and to show jurisdiction.

So again, I would argue that the direct infringement issue is -- it's done, it's waived and they have lost or missed their opportunity to make an affirmative allegation about their own testing.  And with respect to the other issue we just ask the opportunity to find a case that says what Your Honor thinks is the --

**THE COURT:**  Why don't you address your failure to respond to this challenge regarding the six-year period.

**MR. SCHUMAN:**  So Your Honor, on our opposition brief, Page 15, starting at Line 5, we say:

> "And finally as to the relevant time frame, taking the allegations of the complaint in the light most favorable to Applied citing a Ninth Circuit case, the Court can reasonably infer that the development and testing of Endura Volta occurred within the past six years."

Dr. Cohen himself, alleges that Endura Volta, quote "was introduced by Applied on May 13th, 2014." Obviously within the last six years.  And as I said earlier --

**THE COURT:**  Is there an allegation, besides Dr. Cohen's quote, is there an allegation in the complaint that you were thinking of when it talks about the fair inference, about the six year?  Is there any other allegation?

MR. SCHUMAN:  In our DJ complaint?

THE COURT:  Yeah.

MR. SCHUMAN:  It's Paragraph 13, Your Honor.  Which doesn't make the specific allegation that the testing we're referring to there was done in the last six years.  And as I said at the beginning of my remarks, we didn't think that was necessary. The case that Dr. Cohen relies on for the proposition that that is required was decided pre-*MedImmune*, so under a higher standard for DJ jurisdiction.  But as I also said in open court and Dr. Cohen's counsel just said, Cohen's -- Applied's counsel could have come in here to court and said it.  I did say it.  I can confirm that Applied's testing as alleged in Paragraph 13, was in fact done within the six years prior to the filing of the complaint.

If necessary, which I don't think it is, we could add that in the amended complaint.  And I really don't understand the waiver argument.  I think that if the Court is inclined to dismiss the complaint, which I don't think is warranted here, we would be entitled to one opportunity to -- for leave to amend.

THE COURT:  Well, normally assertion of untimeliness is a matter of defense.  If it's not apparent or if it's apparent from the face of the complaint that it's problematic, normally you leave to amend, you leave to amend substantively.  Here we are just talking about Article III jurisdiction, so it seems odd to me to say, well, okay they didn't make the specific

allegation, even though it's in the nature I think of an affirmative, arguably affirmative defense and therefore there is no jurisdiction, I don't think, no jurisdiction is to be equated with a 12(b)(6) type analysis here.

We are talking about the question of Article III jurisdiction. And not, at this point, the -- every aspect of substantive law that may come into play, because whether or not, whether you use the reasonable apprehension, some potential exposure, whatever the test is, that there's some overlap here, but if there's a close enough question it seems to me there's jurisdiction.

**MR. STEWART:** Your Honor.

**THE COURT:** I'm done. I'm going to deny the motion to dismiss. There is sufficient jurisdiction here for the basis that I stated. It seems to me that there's a claim, a potential claim of both direct and indirect infringement. The processes used which are clearly Applied's processes, really on all fours with respect to the animation and the description, puts it into play here, it is front and center. And the -- the EDTX customer lawsuits appear to place the front and center. And it's not just the manufacturer, it is the utilization of the method as set forth for instance, in Paragraph 58. And, and it's not clear to me that I can say so clearly that there's not Article III jurisdiction that Applied is out of the woods.

Whether by, because of statute of limitations questions, or

with respect to the 271(g) question whether they in fact encourage or had some role sufficient with respect to the importation and sale in the United States of the TSMC product as to be potentially liable under an inducement or indirect infringement theory.  Neither party has cited dispositive case law that makes it clear that that is not a possibility here and therefore there's sufficient case or controversy.

So the parties also agree that if I were to make such a ruling -- and I have -- that these cases should be consolidated, and we should get on a consolidated schedule, correct?

**MR. STEWART:**  That's right, Your Honor.  And to address the scheduling issues, my colleague Chris Faucett will take over for me.

**THE COURT:**  Okay.

**MR. SCHUMAN:**  Thank you, Your Honor.  I think, I'm inviting I think TSMC's counsel to talk about the CMC.

**MR. FERRALL:**  Brian Ferrall.

**THE COURT:**  Okay.  So there's a difference of about 45 days, at least, eventually 60 days leading up to claim construction hearing.  Dr. Cohen's pro schedule seems sort of tight and tied into the normal sequencing spacing.  And TSMC, et al. wants a little bit more time in between various stages.

So I'm not sure -- the difference isn't huge, but I guess I would like to know why the parties can't come to some agreement here.

**MR. FERRALL:**  Well, Your Honor, if I could address one thing briefly on the schedule.

**THE COURT:**  Yeah.

**MR. FERRALL:**  There's a couple of points where the schedule diverges.  And the first one and maybe the most significant one has to do with the timing of the invalidity contentions.

I think the schedules that are proposed here all will be perhaps kicked a little bit, at least, because they were based upon maybe an earlier hearing date.

But regardless, the main difference at the outset is that TSMC is proposing approximately, I think, 65 days for invalidity contentions after the disclosure of claims.  And here's why: There are over 200 potential claims among the patents.  And the -- the pleading thus far only identifies an exemplary claim.  And so we -- we truly have no hint as to how many claims will be asserted, but I -- I suspect and fear that it's going to be many.

And while Cohen has had nine months or so to work up infringement contentions, we're being asked to provide invalidity contentions on an unknown number of claims in 45 days.  And that just doesn't seem fair.

So that's what -- that's the first sort of point of difference of, I guess, roughly the better part of a month.

**THE COURT:**  The next big divergence is the exchange of list of claim terms, 14 days pursuant to Local Rule 401 versus what

you want, which appears to be another 45 days or so.

MR. FERRALL:  Right.  And what we're doing in our schedule is we both agree to a commitment on limiting the number of asserted claims down to -- I think it's 32.

THE COURT:  Yes.

MR. FERRALL:  Right.  And then a subsequent limitation on prior art --

THE COURT:  Yes.

MR. FERRALL:  -- a couple of weeks later.  And what we're proposing, which I think is much more logical, to me, is that after the invalidity contentions, that's when the parties do their exchange limiting the number of asserted claims and prior art.  And then we go to the exchange of claim terms.

Under Cohen's --

THE COURT:  So this affords some time to go through that process.

MR. FERRALL:  Right.

THE COURT:  To get into the claims from which you would select the claim terms.

MR. FERRALL:  Right.  Otherwise you're proposing claim terms on claims that might be dropped weeks later.

THE COURT:  Okay.  All right.  Let me hear the reasons to go the other way.

MR. FAUCETT:  Well, Your Honor, I think you picked up on it.  We proposed some dates that are fairly consistent with the local

rules on that.

In terms of the extra time for invalidity contentions, I'd point out some of the -- probably isn't aware of yet, but between TSMC and Applied Materials, they filed, I think, 13 IPRs.  They're pretty much on top of the invalidity issues.

I don't think we're far apart, you know, if -- but it does strike us that, you know, the 45 days is a little much.  We're proposing a tighter schedule on all these things.

**THE COURT:**  Well, and you have mentioned that it may be that we are going to have to slip some of these -- I mean, it's going to take -- how long will it take you to file a consolidated amended complaint?

**MR. FERRALL:**  I think -- um, Cohen's counsel suggested they could file it, I think, by March 1, under the last schedule.

**THE COURT:**  You proposed seven days, now.

**MR. FERRALL:**  Yeah.

**THE COURT:**  Of course, that also would mean you'd have to file your --

**MR. FERRALL:**  Seven -- yeah, seven days after, right.

**THE COURT:**  And you have to file your asserted claim of infringement -- we're already kind of beyond those dates, it looks like.

**MR. FERRALL:**  Right, right.

**THE COURT:**  Let's do this.  I would prefer that you all see if you can agree on a schedule leading up to the actual claim

construction hearing.

I'm inclined to agree that, you know, before narrowing, if we've got a potential 200 claims, that, you know, perhaps a bit of time on the invalidity contentions might be warranted.

And I also agree, in theory, that if we're going to do some narrowing process, you should provide for some breathing space in order to -- before you do the exchange of list of claims.

On the other hand, I'm reluctant to let this slip too far. The idea of hearing a claim construction in the fall, I want to stay by that. I guess you suggested early fall and you suggested late fall, but somewhere perhaps between those.

So if you could work out something, I would like you to do that, and submit a stipulated schedule leading up through claim construction.

MR. SCHUMAN: Right. And now that we have some clarity that Applied -- you saw the way the case-management conference statement was submitted, had a lot of contingencies depending on what the Court did with the motion to dismiss.

THE COURT: Yes.

MR. SCHUMAN: So I think we can all go back and meet and confer, the now three parties, and try to present something a little bit more agreed.

THE COURT: And I do appreciate the parties' narrowing of issues utilizing the Federal Circuit Advisory Council process, I think that is helpful.

And the only other dispute is sort of scope of hours or number of non-expert depositions, and how you slice it, and how many days for Dr. Cohen, and whether that counts or not.  Again, you are not that far off.  I mean, in a way it's half a dozen of one versus six of the other.

But I would like you to take one more crack and see if you can agree on that as well, now that you know the case is consolidated.  And if you can't, I'll resolve it one way or the other.

(Note handed up to the Court)

**THE COURT:**  Betty reminds me that now that the case has been consolidated, all future filings should be filed under C-17-4990, so we have consistency here.

**MR. FERRALL:**  Yep.

**THE COURT:**  Great.  And finally, ADR, I think I did order mediation within 90 days of the Court's decision.  Have you all selected -- where are you at on the mediation?

**MR. FAUCETT:**  From our standpoint we were kind of waiting to hear where the Court was going today, and I think we all now know.

**THE COURT:**  Okay.  You are opting -- is it private mediation?  Or what form of mediation --

**MR. SCHUMAN:**  It's a court-appointed mediator, a private lawyer.  I forget the gentleman's name.  But we have already had a preliminary conversation with him.

**THE COURT:** You have? All right. So the mediator has already been identified.

**MR. SCHUMAN:** Yes.

**THE COURT:** I would contact that mediator immediately. And see if you can get on schedule. And stick within that 90-day schedule.

**MR. SCHUMAN:** Yes, Your Honor.

**THE COURT:** All right. So let's set a further date.

In the meantime, if you could get to me the stipulation within the next two weeks, and then let's -- why don't we reconvene and see how we are doing some time in early June.

**THE CLERK:** June 7th at 10:30.

**THE COURT:** All right. And then, two weeks to submit a stipulation regarding timeline and discovery plan. And, reminder that mediation to be completed within 90 days.

**MR. FERRALL:** I'm sorry; that was at 10:30 on the 7th?

**THE CLERK:** 10:30.

**MR. FERRALL:** Thank you.

**MR. SCHUMAN:** Your Honor, just one last thing. And we are not asking the Court to take any action here, but I wouldn't want to not mention this and have Dr. Cohen's counsel feel surprised.

There is going to be a license defense here, that we will probably meet and confer about when we work on the schedule. And will -- when we submit the stipulation in two weeks, will be

mentioned and addressed, one way or the other.

THE COURT:  Okay.

MR. SCHUMAN:  Okay.  I don't want to not mention that and have Dr. Cohen's counsel claim that we stood here without mentioning it.

But we will talk about that with Dr. Cohen's counsel, and then there will probably be some mention of that in the stipulation that gets filed in two weeks.

THE COURT:  All right.  Good.  So we'll see you -- unless this case resolves, of course, we'll see you in June.

MR. FERRALL:  Thank Your Honor.

MR. SCHUMAN:  Thank Your Honor.

MR. STEWART:  Thank you, Your Honor.

MR. FAUCETT:  Thank you, Your Honor.

THE COURT:  Thank you.

(Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

_____/s/ Belle Ball_____

Belle Ball, CSR 8785, CRR, RDR

Saturday, February 24, 2018